**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
**JEFFREY PARKER,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

**B & H FOTO & ELECTRONICS CORP. D/B/A B&H FOTO VIDEO**

Defendant.
--------------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **JEFFREY PARKER**, ("Plaintiff" or "Mr. Parker") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, **B & H FOTO & ELECTRONICS CORP. D/B/A B&H FOTO VIDEO** ("B&H FOTO VIDEO" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 *et seq.*, arising from Defendant's failure to ensure that its ecommerce Website, www.bhphotovideo.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, **JEFFREY PARKER**, is a resident of Bronx County and is permanently disabled due to legal blindness. Mr. Parker suffers from **Retinitis Pigmentosa**, a severe and progressive retinal disease that has caused significant and irreversible damage to his vision. His treating optometrist, **Dr. Claudette Lomonaco**, confirms that Mr. Parker "is legally blind due to Retinitis Pigmentosa," that his condition "meets the criteria for legal blindness under both State and Federal standards," and that he "should be afforded all privileges and accommodations available to those who are legally blind." (See **Ex. A – Jeffrey Parker Medical Report**.

2. As a blind consumer, Ms. Powell relies exclusively on screen-reading software — including NonVisual Desktop Access ("NVDA") — and keyboard-only navigation to browse websites, read product information, select sizes, compare options, and complete online purchases. Screen-reading software converts digital content into synthesized speech or refreshable Braille, enabling blind users to navigate websites independently. For this technology to function, websites must be properly coded to provide meaningful alternative text for images, programmatically determinable labels for interactive controls, descriptive link text, logical heading structure, keyboard-accessible navigation, and properly implemented ARIA markup. When websites fail to incorporate these requirements, screen readers cannot accurately interpret or communicate the website's content, rendering the site inaccessible to blind users.

3. The United States Census Bureau reports that millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The U.S. Department of Justice has repeatedly affirmed that Title III of the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web, and that businesses must ensure their websites are accessible to blind and visually impaired individuals.

4. Defendant, **B & H FOTO & ELECTRONICS CORP.**, is a New York corporation registered to do business in Florida (Document No. F21000004835; EIN 13-2768071) and is the registrant, owner, and operator of the **B&H Photo Video** brand and its ecommerce Website, **www.bhphotovideo.com**. Through its Website, Defendant sells consumer electronics, photography equipment, computers, audio devices, and related accessories to consumers nationwide, including residents of New York. For blind consumers such as Mr. Parker, Defendant's Website is the only

means of independently accessing detailed product descriptions, specifications, pricing information, and other essential details necessary to make informed purchasing decisions.

5. Equal access to ecommerce platforms is critical for blind and visually impaired individuals. The internet has become an indispensable tool for modern life, serving as a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence and equal access that sighted users take for granted.

6. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.1, which establish internationally recognized standards for accessible website design. These guidelines are widely adopted by private entities, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

7. Defendant's Website is not designed, constructed, maintained, or operated in a manner that is compatible with screen-reading software. As a result, blind and visually impaired individuals — including Ms. Powell — are unable to independently navigate Defendant's Website, access product information, select items, or complete purchases. Defendant's failure to provide an accessible Website denies blind users full and equal access to the goods, services, privileges, and advantages offered through www.bhphotovideo.com.

8. Plaintiff brings this civil action on behalf of himself, and all others similarly situated to challenge Defendant's ongoing operation of an inaccessible Website in violation of Title III of the ADA, 42 U.S.C. § 12181 et seq., the New York State Human Rights Law, and the New York City Human Rights Law. Plaintiff seeks declaratory and injunctive relief requiring Defendant to

remediate its Website, adopt accessibility policies, and ensure ongoing compliance with WCAG 2.1 so that blind and visually impaired individuals may independently access the goods and services Defendant offers online.

**JURISDICTION & VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

10. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

12. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward Bronx consumers through its highly interactive ecommerce website, www.bhphotovideo.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents, including Bronx County and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce

websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

13. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

14. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

15. Plaintiff **JEFFREY PARKER** is, and at all relevant times was, a resident of Bronx County, New York. Mr. Parker is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by his treating optometrist, **Dr. Claudette Lomonaco, O.D.**, Mr. Parker suffers from **Retinitis Pigmentosa**, a permanent and progressive retinal disease that has caused severe and irreversible damage to his vision. Dr. Lomonaco affirms that Mr. Parker "is legally blind due to Retinitis Pigmentosa" and that his condition meets both federal and state criteria for legal blindness. (See **Ex. A – Jeffrey Parker Medical Report**.)

16. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Parker depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software. Proper semantic structure, meaningful alternative text,

labeled interactive controls, descriptive link text, and accessible navigation are essential for him to independently access digital content.

17. Defendant **B & H FOTO & ELECTRONICS CORP.** is a **New York corporation** (NY DOS ID 267285; FEIN 13-2768071) registered to do business in Florida (Document No. F21000004835). Defendant's principal place of business is located at **420 9th Avenue, New York, NY 10001**, where it owns and operates the well-known **B&H Photo Video SuperStore**. Defendant also owns, operates, and controls the commercial website **www.bhphotovideo.com**, through which it markets, displays, and sells consumer electronics, photography equipment, computers, audio devices, and related accessories to consumers throughout the United States, including residents of New York. Defendant is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(E) as a "sales establishment," and its Website serves as an extension and integral component of Defendant's physical retail operations. At all times relevant to this action, Defendant has had actual and constructive knowledge of its obligations under the ADA and WCAG 2.1 standards.

## NATURE OF ACTION

18. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

19. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and

communicating — for sighted, blind, and visually impaired individuals alike.

20. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22. Plaintiff, JEFFREY PARKER is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYSHRL, NYCHRL, and NYCRL. To access the Internet, Plaintiff re23. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software translates the visual internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

23. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts

as the appropriate benchmark for ADA compliance.

24. Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles and headings;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible PDF files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Empty buttons, empty links, and unlabeled interactive controls that prevent a screen reader user from independently navigating and completing a transaction.

## STATEMENT OF FACTS

25. Plaintiff **JEFFREY PARKER** is a legally blind consumer residing in Bronx County, New York. He suffers from **Retinitis Pigmentosa**, a severe and progressive retinal disease that has caused permanent and irreversible damage to his vision. His treating optometrist, **Dr. Claudette Lomonaco**, confirms that Mr. Parker "is legally blind due to Retinitis Pigmentosa" and that his condition meets both federal and New York State criteria for legal blindness. (See **Exhibit A**.)

26. Mr. Parker's blindness is permanent, non-episodic, and substantially limits his major life activity of sight. He cannot visually perceive product specifications, technical features, color variations, or performance attributes in physical stores. His impairment meets the criteria for legal blindness under federal and New York State standards, and he requires accommodations afforded to legally blind individuals under state and federal law.

27. As a blind consumer, Mr. Parker relies exclusively on screen-reading software — including **NVDA** — and keyboard-only navigation to browse websites, read product descriptions, compare options, and complete online purchases. Without a properly coded, screen-reader-compatible website, he cannot independently access online shopping services on equal terms with sighted consumers.

28. On **September 1, 2026**, Mr. Parker visited **www.bhphotovideo.com** using NVDA with the genuine intent to purchase two specific products sold by Defendant: **(1)** the *ASUS ROG G700 Gaming Desktop (G700TF-DS774)*, a high-performance gaming and workstation computer marketed for advanced graphics workloads and accessibility-related software; and **(2)** the *Samsung ViewFinity S9 5K Monitor*, a professional-grade display marketed for color-critical work and high-resolution productivity. These products were of particular importance to Mr. Parker because he uses high-performance computers and monitors for adaptive digital tasks, including

magnification software, audio-based editing tools, and accessibility programs that require powerful hardware.

29. The ASUS ROG G700 Gaming Desktop is marketed as a stability-oriented, high-performance workstation with advanced cooling, dedicated graphics hardware, and processing capabilities that support accessibility software. Because Mr. Parker cannot visually inspect computers in stores, he depends on accessible online product descriptions to evaluate performance, specifications, and compatibility with his assistive technology.

30. The Samsung ViewFinity S9 5K Monitor is marketed as a high-resolution, color-accurate display recommended for individuals who rely on enlarged text, high-contrast modes, and screen-magnification tools. Mr. Parker relies on accessible digital interfaces to review product specifications, compare options, and select monitors that meet his accessibility needs.

31. While navigating Defendant's Website on September 1, 2026, Mr. Parker attempted to access the ASUS ROG G700 product page, review the product descriptions and features, identify available configurations, and activate the controls needed to add the item to his cart. At each step, he encountered disabling access barriers that prevented him from completing these tasks independently.

32. Specifically, when NVDA attempted to read the ASUS ROG G700 product page, it encountered product images lacking meaningful alternative text. The **WAVE scan** of this page documents **37 missing alternative text errors**. As a result, Mr. Parker could not understand the computer's design, ports, cooling structure, or included components. Because a blind user's ability to evaluate computer hardware depends critically on descriptive image alternatives, these errors directly foreclosed his ability to make an informed purchasing decision.

33. The WAVE scan further reveals **empty buttons** and **empty links** throughout the ASUS ROG G700 page. NVDA either announced nothing meaningful for numerous controls or

announced insufficient information to identify the control's purpose. This prevented Mr. Parker from activating configuration options, accessing product details, dismissing overlays, or adding the product to his cart.

34. Mr. Parker also encountered **missing labels** on interactive controls, including configuration selectors and purchase-related interface elements. Because of these missing labels, NVDA announced these controls only as "button" or "link," without indicating their purpose. This directly precluded him from choosing a configuration or advancing toward checkout.

35. The WAVE scan additionally documents **broken ARIA references**, causing NVDA to announce "ARIA label not found," preventing Mr. Parker from accessing product descriptions, pricing, and availability. These errors rendered the page unusable for a blind consumer attempting to complete a purchase.

36. On **September 15, 2026**, Mr. Parker returned to Defendant's Website to reattempt the purchase of both products and to determine whether the barriers he previously encountered had been corrected. During this second visit, he again attempted to review the Samsung ViewFinity S9 5K Monitor product page, understand its accessibility-related features, identify configuration options, and move toward adding the product to his cart.

37. The **WAVE scan** of the monitor product page identifies **multiple accessibility errors**, including missing form labels, empty buttons, empty links, contrast failures, and broken ARIA references. Because of these barriers, NVDA could not announce available configurations, pricing, product descriptions, or interactive controls. Mr. Parker again could not independently complete the transaction.

38. During the September 15 visit, Mr. Parker also encountered **keyboard traps**, preventing him from navigating past certain interactive elements and forcing him to restart the page. These traps prevented him from exploring the product's features or advancing toward checkout.

39. On **October 1, 2026**, Mr. Parker returned to the Website for a third time, intending to reattempt access to both product pages and to browse additional computer and monitor offerings. He attempted to use Defendant's Homepage to identify and navigate to additional product categories of interest.

40. The **WAVE scan of Defendant's Homepage** identifies **53 accessibility errors**, including:

- missing alternative text (WCAG 1.1.1),
- empty buttons (WCAG 4.1.2),
- empty links (WCAG 2.4.4),
- missing form labels (WCAG 1.3.1),
- contrast failures (WCAG 1.4.3), and
- broken ARIA references (WCAG 4.1.3). These errors were found across the Homepage, product collection pages, and individual product pages including the ASUS ROG G700 and Samsung ViewFinity S9 pages.

41. When Mr. Parker attempted to navigate Defendant's Homepage on October 1, 2026, he encountered Homepage-specific accessibility barriers documented in the WAVE scan. Because Homepage images, buttons, links, and navigation elements lacked proper accessible labels, alternative text, and structural coding, Mr. Parker could not efficiently determine which product categories were available, navigate to relevant collections, understand promotional content, or independently explore Defendant's offerings.

42. Together, the WAVE scans and Mr. Parker's repeated experiences confirm that the barriers he encountered were not temporary or isolated glitches, but part of a page-wide and

site-wide pattern of non-compliance with generally accepted accessibility standards, including WCAG 2.1 Level A and AA principles. Exhibit B

43. As a result of these accessibility barriers, Mr. Parker was denied full and equal access to Defendant's Website and was unable to independently complete the purchases he specifically intended to make. He left the Website without completing his transactions and without any accessible means of obtaining an equivalent shopping experience.

44. Mr. Parker is highly motivated to return to **www.bhphotovideo.com** and complete his intended purchases once the Website is made accessible. His intent to return is concrete, ongoing, and not speculative. He still intends to purchase the ASUS ROG G700 Gaming Desktop and the Samsung ViewFinity S9 5K Monitor, and he seeks to browse additional computer and monitor offerings through Defendant's Website.

45. Mr. Parker's intent to return to Defendant's Website specifically — rather than merely to browse the Internet generally — is grounded in concrete facts: he previously visited the Website on three separate dates; he sought to purchase two specific identified products; he attempted to engage with specific commercial tasks including reviewing product benefits, evaluating configuration options, using product controls, and proceeding toward checkout; and he remains interested in completing those transactions once the Website is accessible.

46. Mr. Parker has suffered a past injury — his inability to independently complete intended transactions and access specific, identified products due to documented accessibility barriers on **www.bhphotovideo.com** — and faces a real and immediate threat of future harm given his specifically articulated intent to return to the Website once it is made accessible and the ongoing nature of the accessibility deficiencies documented in the WAVE scans. His injuries are directly traceable to Defendant's failure to maintain an accessible website, and they are fully redressable through the injunctive and other relief requested herein.

## CLASS ACTION ALLEGATIONS

47. Plaintiff JEFFREY PARKER brings this action on behalf of himself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.bhphotovideo.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

48. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York, who have attempted to access www.bhphotovideo.com and were denied equal access to the goods, services, and information offered thereon.

49. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access www.bhphotovideo.com and have been denied equal access due to the systemic accessibility barriers confirmed by WAVE audits, and by Plaintiff's declarations, which corroborates the automated audit results and confirms that Defendant's Website contains pervasive WCAG 2.1 Level A and AA violations — including missing alternative text, empty buttons, empty links, missing form labels, broken ARIA references, inaccessible focus indicators, and nonsemantic navigation elements — that uniformly impact blind users across multiple pages and multiple visits. These barriers are not isolated anomalies but reflect a site-wide pattern of non-compliance that affects all blind consumers who attempt to access Defendant's Website, www.bhphotovideo.com thereby rendering the Class and Subclass

sufficiently numerous for certification.

50. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

51. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

52. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

53. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to

ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

54. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

55. Plaintiff, **JEFFREY PARKER**, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

56. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

57. Defendant's Website, www.bhphotovideo.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

58. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

59. Defendant's website contains numerous accessibility barriers—including missing

alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

60. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

61. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

62. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal

access to the Website, www.bhphotovideo.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

63. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
**(New York State Human Rights Law)**
**("NYSHRL")**

64. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

66. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

67. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.bhphotovideo.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of

N.Y. Executive Law § 292(1).

68. Plaintiff has visited the Website, www.bhphotovideo.com on a number of occasions and has encountered barriers to his access that exist.

69. Under Article 15 N.Y. Executive Law § 296(2)(a) “it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

70. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

71. Defendant’s actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

72. The Defendant’s discriminatory practice also includes, "a refusal to take such steps as

may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

73. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

74. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

75. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

76. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

77. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

78. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered

through the website.

79. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

80. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

82. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

83. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

84. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

85. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as

Defendant's Website, www.bhphotovideo.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

86. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

87. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

88. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

89. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

90. Plaintiff, **JEFFREY PARKER.** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

91. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions,

of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

92. Defendant is subject to NYCHRL because it owns and operates the Website, www.bhphotovideo.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

93. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

94. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

95. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

96. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

97. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

98. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

99. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

100. Plaintiff is also entitled to reasonable attorneys' fees and costs.

101. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

102. Plaintiff, **JEFFREY PARKER**, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

103. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access

barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

104. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.bhphotovideo.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
October 19, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com